

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 16, 2021

**BY CM/ECF**

The Honorable Andrew L. Carter
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

> Re:   *United States v. Kevin Taylor*, 18 Cr. 586 (ALC)

Dear Judge Carter:

    The defendant in the above-captioned case is scheduled to be sentenced on June 22, 2021. For the reasons set forth below, the Government believes that the stipulated Guidelines sentence of 60 months' imprisonment would be sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

### I. Offense Conduct & Procedural History

    As described in the Presentence Investigation Report ("PSR"), on or about April 19, 2018, co-defendant Timothy Bynum had a conversation with Victim-1 outside of a pharmacy in the Bronx, New York, including a discussion in which Bynum attempted to sell marijuana to Victim-1. Victim-1 declined to purchase the marijuana and then went into the pharmacy to obtain oxycodone pills. (PSR ¶ 16). Later that day, at approximately 2:30 p.m., several individuals (the "Robbery Crew") entered Victim-1's apartment, demanding money and pills. During that robbery, the Robbery Crew stole, among other things, oxycodone pills from Victim-1. One member of the Robbery Crew, who was armed, engaged in a struggle with another victim inside of the apartment ("Victim-2") and fired a shot into Victim-2's leg. The Robbery Crew thereafter left Victim-1's apartment with most of the oxycodone pills. (PSR ¶ 17).

    The victims subsequently called 911. After law enforcement arrived on the scene, they recovered from Victim-1's apartment the remaining oxycodone pills that belonged to Victim-1 and a spent shell casing. (PSR ¶ 18). Law enforcement interviewed Victim-1 and a third individual who was present at the time of the robbery ("Victim-3"). Victim-1 and Victim-3 identified photographs of Bynum and co-defendant Wakiem Johnson as individuals who participated in the robbery. (PSR ¶¶ 19-20). Further, surveillance videos that were recorded approximately an hour before the robbery showed Bynum and Johnson entering Victim-1's

apartment building, and videos that were recorded shortly after the robbery depicted Johnson, the defendant, and a third individual ("CC-1") fleeing from the apartment building. (PSR ¶¶ 22-23.)

On or about April 25, 2018—approximately six days after the robbery—two NYPD officers conducted a traffic stop of a livery cab carrying the defendant in the vicinity of West 181st Street and University Avenue in the Bronx. (PSR ¶ 25). The officers smelled marijuana emanating from the livery cab and observed that the defendant was nervous and continuously fidgeting with his bags during the traffic stop. The officers instructed the defendant to get out of the livery cab and patted down the defendant for weapons. (PSR ¶ 26). During this pat-down, the officers immediately felt a hard object shaped like a firearm inside of the defendant's jacket. (PSR ¶ 26). The defendant began to resist the officers, and he attempted to take off his jacket while the officers attempted to arrest him. (PSR ¶ 27). After the officers were unable to subdue the defendant, the officers used their stun guns to stun the defendant. (PSR ¶ 27). The officers recovered a .380 caliber Ruger Model LC380 semi-automatic pistol from the defendant's jacket, and also recovered approximately $2,000 in cash, a cellphone (the "Taylor Cellphone"), approximately 8 ziploc bags containing marijuana, approximately 3 twist bags containing marijuana, approximately 3 oxycodone pills, an alprazolam tablet, and approximately 19 tablet fragments. (PSR ¶ 30). The oxycodone pills matched the appearance of the pills stolen during the robbery on April 19, 2018. Similarly, a firearms examiner found that the defendant's semi-automatic pistol had fired the shots during the robbery on April 19, 2018. Additionally, a review of the cell site location records for the Taylor Cellphone indicated that the Taylor Cellphone had been in the vicinity of the location of the robbery while it occurred. (PSR ¶¶ 32-34). Following his arrest, the defendant was transported to a nearby hospital for medical care. The defendant fled from the hospital while using the bathroom and was re-arrested on April 28, 2018. (PSR ¶ 31).

On August 15, 2018, the defendant was charged in an indictment with Hobbs Act robbery conspiracy, in violation of Title 18, United States Code, Section 1951 (Count One); Hobbs Act robbery, in violation of Title 18, United States Code, Sections 1951 and 2 (Count Two); conspiracy to distribute and possess with intent to distribute oxycodone, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C) (Count Three); distributing and possessing with the intent to distribute oxycodone, in violation of Title 21, United States Code, Sections 812, 841(a)(1), and (b)(1)(C) (Count Four); using and carrying a firearm in furtherance of drug trafficking, which was brandished and discharged, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), (iii), and 2 (Count Five); and being a felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g) and 2 (Count Six). (PSR ¶ 1).

II. **The Defendant's Plea and Applicable Guidelines Range**

On May 15, 2019, the defendant pleaded guilty pursuant to a plea agreement to the lesser included offense of Count Five—using and carrying a firearm in furtherance of drug trafficking, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2. (PSR ¶ 9). Pursuant to U.S.S.G. § 2K2.4(b), the plea agreement stipulated that the Guidelines sentence for Count Five is the minimum term of imprisonment required by statute, and Chapters Three and Four of the Guidelines do not apply. As a result, the plea agreement stipulated that the Guidelines sentence for Count Five is 60 months' imprisonment. Pursuant to U.S.S.G. § 4B1.1, the plea agreement

also stipulated that the defendant has 14 criminal history points, resulting in a Criminal History Category of VI.

In the PSR, prepared on February 25, 2020, the Probation Office also found that the Guidelines sentence was 60 months' imprisonment. (PSR ¶¶ 45-87, 133-134). While the plea agreement stipulated that the defendant had 14 criminal history points, the PSR found that the defendant had 16 criminal history points. The Government was not aware that the defendant had a previous youthful offender adjudication in Bronx County Supreme Court for Burglary in the Third Degree, which resulted in a sentence of 90 days' imprisonment and 5 years of probation. This sentence results in two additional criminal history points. (PSR ¶ 48). As a result, the Government agrees that the PSR correctly calculated that the defendant has 16 criminal history points. This does not impact the defendant's Criminal History Category or Guidelines sentence.[1]

### III. Discussion

#### A. Applicable Law

Although *United States* v. *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

---

[1] The Government notes that the plea agreement does not limit the right of either party to seek an appropriately adjusted Guidelines range if "it is determined based upon new information that the defendant's criminal history category is different from that set forth above."

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> 
> (B)    to afford adequate deterrence to criminal conduct;
> 
> (C)    to protect the public from further crimes of the defendant; and
> 
> (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B.    A Guidelines Sentence of 60 Months' Imprisonment is Reasonable in this Case.

The Government submits that the stipulated Guidelines sentence of 60 months' imprisonment is necessary in this case to reflect the seriousness of the defendant's conduct, promote respect for the law, and provide just punishment for the offense.

At the outset, a substantial term of incarceration is necessary to reflect the seriousness of the defendant's conduct and promote respect for the law. On April 19, 2018, the defendant participated in a home invasion and robbery of an individual's apartment. Members of the robbery crew stormed into the apartment with a gun and demanded drugs and money from the victims. During a struggle with one of the victims, a shot was fired and hit one of the victims in the leg. Less than a week later, the defendant was caught red-handed with the gun used during the robbery, a large amount of cash, and a large amount of marijuana and oxycodone pills packaged for sale. Reflecting his consciousness of guilt, the defendant engaged in a prolonged struggle with the officers in an attempt to distance himself from the gun. Additionally, the defendant fled from the hospital where he was receiving medical treatment following his arrest. The Government respectfully submits that a lengthy term of imprisonment is necessary to reflect the harm and the danger to the community caused by the defendant's violent conduct.

A Guidelines sentence here is also necessary to reflect the defendant's substantial criminal history, which dates back to 2009 and now includes 8 criminal convictions. These criminal convictions include lengthy terms of imprisonment for burglary, firearms possession, contraband smuggling, bail jumping, and escape. Even more concerningly, this is the defendant's third criminal conviction involving possession of a firearm since 2012. In December 2012, the defendant pleaded guilty to Attempted Criminal Possession of a Weapon in the Second Degree after being found in possession of a loaded .380 semi-automatic pistol in a school zone (PSR ¶ 51). In June 2016, the defendant pleaded guilty to Criminal Possession of a Firearm after being found in possession of a loaded .38 caliber Taurus revolver in a residential neighborhood in the Bronx. (PSR ¶ 57). The defendant received a significant sentence for this firearm offense—18 months to 3 years' imprisonment. The defendant was then released to parole in January 2018. *While on parole*, the defendant participated in this April 2018 robbery and was arrested a week later for his possession of a firearm, marijuana, and oxycodone pills from the robbery. In June 2016, the defendant also pleaded guilty to (1) Attempted Promotion of Contraband in the First Degree after being found in possession of a weapon and tobacco in Rikers Island; and (2)

Attempted Escape in the Second Degree after attempting to escape custody by climbing the ceiling of an interview room inside of the Bronx Criminal Court. In sum, the defendant's criminal record includes crimes committed while on pretrial release, crimes committed while on parole, and even crimes while in custody. As a result, the Government respectfully submits that a Guidelines sentence of 60 months' imprisonment is necessary here for public safety and to reflect the defendant's unwillingness to refrain from committing serious crimes when released in the community.

**IV.     Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of 60 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By:     /s/ Andrew K. Chan
Andrew K. Chan
Assistant United States Attorney
(212) 637-1072

cc: Steven Brill, Esq.